Díaz et al., Demandantes y Apelantes, v. Balseiro & Giorgetti et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Arecibo en pleito sobre nulidad y otros extremos.

No. 1793.—Resuelto en marzo 10, 1919.

Partición—Bienes de Menores—Bienes Gananciales—Ratificación de la Partición—Impedimento (*Estoppel*).—Después de fallecida la esposa y madre, el marido e hijos menores supervivientes, asistidos del partidor testamentario, dividieron los bienes gananciales entre ellos extrajudicialmente, adjudicándose una parte de los bienes inmuebles al viudo, quien se hizo cargo de las deudas de la sociedad de gananciales. Posteriormente el viudo segregó y vendió a los demandados una parcela del terreno así adjudicádole. Después que todos los hijos habían llegado a su mayor edad, ratificaron un contrato de arrendamiento de toda la propiedad verificado entre el viudo y los demandados, contrato en el cual se reconocían la adjudicación al viudo y la venta de parte de la propiedad a los demandados. *Se resolvió:* 1°., que esto constituía una ratificación, hecha después de la mayoría de edad, de la partición anulable y que, por tanto, los hijos estaban impedidos de sostener una acción pidiendo la nulidad de la adjudicación al cónyuge *supérstite* o la del traspaso posterior hecho por éste a favor de los demandados; y 2°., que una partición entre herederos es una cosa íntegra y no puede destruirse parcialmente, citando a *Vázquez* v. *Santalís et al.*, 26 D. P. R. 677.

Los hechos están expresados en la opinión.
Abogado de los apelantes: *Sr. Luis Llorens Torres.*
Abogados de los apelados: *Sres. Herminio Díaz Navarro* y *José y Manuel Tous Soto.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Los demandantes y los demandados apelaron en este caso, aunque sólo los demandantes se llaman apelantes. Los mencionados demandantes son diez de los hijos de Joaquina Llenza que falleció bajo testamento en 1893. Para esa fecha y

hasta después de practicada la partición en este caso los mencionados herederos eran todos menores de edad. En esa partición se adjudicó al viudo Manuel Díaz Fonseca determinada porción de cierta parcela de terreno, montante a 79 cuerdas, segregada de la hacienda denominada "Higüerito," en pago de su haber y para el pago de la deuda de la sociedad de gananciales. La hacienda "Higüerito" estaba compuesta de ciento cuarenta y cinco cuerdas y pico y pertenecía a la sociedad conyugal y por la escritura particional 79 cuerdas de la misma, como ya hemos dicho, fueron adjudicadas al citado esposo y socio supérstite. Joaquina Llenza dejó once hijos. Uno de ellos falleció después y le sucedió su padre, el citado Díaz Fonseca, quien también falleció siendo también sus herederos los demandantes.

Subsiguientemente a la adjudicación en 1895 de las citadas 79 cuerdas, de ellas sacó Díaz Fonseca 46 cuerdas que vendió a "Balseiro & Giorgetti" quienes a su vez las vendieron a la "Plazuela Sugar Company," siendo demandados en este caso la mercantil "Balseiro & Giorgetti" y la "Plazuela Sugar Company." Los demandantes pidieron no sólo la nulidad de la adjudicación de las 79 cuerdas sino que también interesaban se le devolvieran por la demandada "Plazuela Sugar Company" las 46 cuerdas así trasmitidas. Los apelados y demandados alegan entre otras, las defensas de confirmación y *estoppel* y que son terceros. La corte de distrito estimó que la adjudicación de las 79 cuerdas era nula, pero se negó a dictar sentencia en reivindicación de las 46 cuerdas parcialmente por el fundamento de que las 46 cuerdas eran naturalmente parte de la finca que hubiere correspondido a Díaz Fonseca por sus participaciones en la sociedad de gananciales y también porque los demandados, y especialmente la "Plazuela Sugar Company," eran terceros.

Por ser menores todos los herederos a la fecha de la citada adjudicación de las 79 cuerdas, e invocando el principio sentado en el caso de *Longpré* v. *Díaz,* 237 U. S. 512, los apelantes sostienen que dicha adjudicación de las 79 cuerdas care-

ce de fuerza y validez por cuanto ella envuelve la enajenación de bienes de menores sin los debidos procedimientos judiciales. Incidentalmente sostienen que la aprobación judicial de una partición o de operaciones testamentarias realizadas después de tramitados los procedimientos y estando envueltos derechos de menores, es insuficiente.

El manifiesto propósito de la demanda, interpretada a la luz del alegato de los apelantes, es el de que puesto que la adjudicación original en favor del viudo de las 79 y pico de cuerdas es nula, son nulas también las subsiguientes trasmisiones de las determinadas 46 cuerdas. Se sostiene que la cabida menor estaba necesariamente comprendida en la mayor. A no ser por ciertos principios de confirmación y *estoppel,* que habremos de discutir, si la adjudicación de las setenta y nueve cuerdas es nula, lo es también la trasmisión de las 46 cuerdas, menos en cuanto esa trasmisión afecte a la parte o partes proindivisas que pertenecían al viudo independientemente de la escritura de partición. Abrigamos una gran duda sobre si, en vista de la decisión del caso de *Longpré* v. *Díaz, supra,* los apelados podían sostener que son terceros. Del registro suficientemente aparece que los herederos de Joaquina Llenza eran menores a la fecha de la adjudicación de la finca al padre de éstos. Con arreglo a la doctrina sentada en el caso de *Longpré* v. *Díaz, supra,* la adjudicación de 79 cuerdas hecha a favor de Díaz Fonseca era nula cuando se hizo y hubiera seguido siéndolo de no haberse podido invocar principio alguno de confirmación o *estoppel* contra los referidos herederos de Joaquina Llenza. Díaz Fonseca fué el esposo de Joaquina Llenza y la finca de que se segregaron las setentinueve cuerdas era propiedad conyugal compuesta de 145 cuerdas. A la fecha en que falleció su esposa le correspondía la mitad en todas y cada una de las cuerdas de que se componía la finca sujeta a deudas. Los herederos eran todos menores de edad y su padre hizo lo que implicaba ser un arreglo extrajudicial o convenio particional por el cual se dividió la propiedad entre todos. El padre renunció a su derecho de

usufructo en la parte adjudicada a. los menores hijos, se hizo cargo de las deudas y mediante el mencionado arreglo particional se le adjudicaron las 79 cuerdas ya mencionadas. De paso diremos que Joaquina Llenza falleció bajo testamento y en su última voluntad prohibió la intervención judicial y nombró un *contador partidor* para practicar la división, quien efectivamente compareció a tales propósitos en la escritura de partición.

En la escritura de partición se nombró un defensor para los menores por el interés adverso que pudiera haber tenido su padre. En su forma la escritura de partición era un contrato celebrado entre todos los herederos y el padre, en el que se adjudicaban determinadas porciones de terreno a cada uno de los menores herederos. La idea de la partición fué que se conservase toda la finca intacta, pero teniendo el viudo o cualquiera de los hijos el derecho a segregar la parte a él adjudicada. La escritura de partición fué debidamente inscrita en el registro de la propiedad.

Los herederos, por lo tanto, en cualquier tiempo, de acuerdo con la jurisprudencia sentada en el caso de *Longpré* v. *Díaz, supra,* tenían un perfecto derecho a impugnar el así llamado convenio particional. El citado convenio, sin embargo, era una unidad y los herederos no podían alegar su derecho bajo la escritura de partición, aceptando beneficios bajo la misma y al propio tiempo impugnarla. Bajo la escritura de partición los herederos tomaron ciertas porciones determinadas, libres de deudas y libres del derecho de usufructo que le correspondía al padre de los mismos en las participaciones pertenecientes a ellos. La cuestión a resolver es si los herederos han hecho algo que implique la ratificación o confirmación de la escritura de partición.

Según se ha consignado en las alegaciones, uno de los herederos enajenó las cinco cuerdas adjudicádasle mediante la citada escritura de partición. De tiempo en tiempo Balseiro & Giorgetti habían arrendado la hacienda Higüerito, o partes de la misma, a Díaz Fonseca tanto antes como después

del traspaso de las 46 cuerdas, de 1895 consumado en 1901. En abril 29 de 1910, otorgaron, de una parte Díaz Fonseca y sus hijos adultos, y de la otra, Balseiro y Giorgetti, un contrato de arrendamiento por el que se reconoce tanto la adjudicación de las 79 cuerdas hecha en favor del padre como la segregación de las 46 cuerdas. En esa fecha tres de los hijos eran aún menores de edad, pero en 1912 todos los citados herederos, a la sazón mayores de edad, confirmaron el contrato de arrendamiento previamente otorgado. Dada la inscripción de la escritura de partición en favor de los menores herederos y su concurrencia en los contratos de arrendamiento a los propios demandados, Balseiro & Giorgetti, la prueba demuestra que los herederos en realidad de verdad, aceptaron la división hecha por la escritura de partición y estaban en el 1912 y antes de esa fecha en posesión de los terrenos adjudicádosles por la citada escritura de partición. Es de presumirse que adquirieron bajo la escritura y su inscripción aun cuando no hubiesen otorgado ningún contrato de arrendamiento. Creemos que hubo una perfecta ratificación de acuerdo con los artículos 1276, 1277, 1278, 1279 y 1280 del Código Civil. El artículo últimamente citado prescribe que la confirmación purifica el contrato de los vicios de que adoleciera desde el momento de su celebración, de modo, pues, que los actos de los demandantes y apelantes han confirmado la escritura de partición que se otorgó en el 1895.

Sobre los principios generales en materia de ratificación de contratos, véase el caso de *Craig* v. *Van Bebber,* 18 Am. St. Rep. 569, y las notas contenidas en las páginas 699 *et seq.*

Los hechos que hemos relacionado, a nuestro juicio, pudieran alegarse como *estoppel,* especialmente contra los herederos adultos que toleraron tantos actos de parte de Balseiro & Giorgetti sin una protesta siquiera. Los apelantes también estaban impedidos en la misma forma en que lo hubiera estado su padre, por lo que atañe a la herencia paterna.

No sólo existe confirmación en este caso sino que la única nulidad a que los demandantes hubieran tenido derecho en

su caso hubiera sido la de la escritura particional en su integridad por constituir una unidad, como ya hemos visto en el caso de *Vázquez* v. *Santalís,* 26 D. P. R. 677.   Los hechos de aquel caso, aunque de más fuerza que los del presente caso, son suficientemente análogos para hacer de aplicación algunos de los principios de aquel caso.   En este caso también, como en aquél, ninguno de los herederos ofrece restablecer el *status quo* a la fecha del fallecimiento de Joaquina Llenza.

Si llegara a intentarse ahora dividir la herencia de Joaquina Llenza, la Plazuela Sugar Company tendría derecho a exigir todo lo que a Díaz Fonseca hubiera correspondido, y a menos que estas 46 cuerdas fueran mejor que cualquiera otra porción de la hacienda Higüerito hubiera tenido un derecho equitativo para insistir en que las 46 cuerdas que ahora tienen se le adjudicaran a Díaz Fonseca y a su vez a la citada Plazuela Sugar Company.

La sentencia recurrida de fecha 24 de julio de 1917 debe ser confirmada en cuanto declara sin lugar la demanda respecto de la reivindicación de la finca de 46 cuerdas descrita en la demanda y nulidades de los traspasos sucesivos de la misma a los demandados, sociedad Balseiro & Giorgetti y corporación Plazuela Sugar Company y también respecto a las nulidades de inscripciones solicitadas, y revocada en cuanto declara sin validez ni eficacia la adjudicación hecha al viudo don Manuel Díaz Fonseca en las operaciones divisorias del caudal hereditario de doña Joaquina Llenza y Gago en cuanto a una participación de los demandantes en diez undécimas partes de una mitad en común con el viudo, de la finca Higüerito de 145 cuerdas y 3 céntimos.

> *Confirmada la sentencia apelada en cuanto a la demanda de reivindicación de la finca, los traspasos y las inscripciones solicitadas y revocada en cuanto a la nulidad de la adjudicación efectuada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.